UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOIS I. BRADY,<br><br>         Plaintiff,<br><br>    v.<br><br>TERRY OTTON, et al.,<br><br>         Defendants. | Case No. 15-cv-00757-WHO<br><br>**ORDER GRANTING PLAINTIFF-APPELLEE'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 3, 4 |

## INTRODUCTION

In this bankruptcy matter, defendant-appellants Nancy and Terry Otton appeal an order dismissing their counterclaim in a multiparty adversary proceeding still pending in the United States Bankruptcy Court for the Northern District of California. The bankruptcy trustee, plaintiff-appellee Lois Brady, moves to dismiss the appeal for lack of jurisdiction under 28 U.S.C. § 158. I agree with Brady that the order dismissing the Ottons' counterclaim was not a final order appealable as of right under 28 U.S.C. § 158(a)(1). The circumstances of this case do not warrant interlocutory review under 28 U.S.C. § 158(a)(3) and neither party has identified any other basis for jurisdiction. Accordingly, the motion to dismiss is GRANTED.

## BACKGROUND

Hill Wine Company, LLC ("HWC") was a winery based in Napa County, California owned and operated by Rebecca and Jeffrey Hill. On May 1, 2014, HWC filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of California. Dkt. No. 13-1 at 3. The bankruptcy case was converted to a Chapter 7 liquidation proceeding shortly thereafter. *Id.*

Nancy Otton is Rebecca Hill's aunt. Mot. 2 (Dkt. No. 4). She and her husband, Terry Otton, loaned $1.75 million to HWC. Dkt. No. 9-26 at ¶¶ 6-8. The Ottons also personally

guaranteed a $300,000 advance to HWC from Umpqua Bank. Mot. 2. The Ottons filed two proofs of claim in HWC's bankruptcy case: (1) Claim No. 59 for the $1,659,988.00 allegedly still due on the $1.75 million loan; and (2) Claim No. 60 in the amount of $320,770.50 for their guaranty of the Umpqua Bank advance. *Id.*

On October 15, 2015, Brady filed an adversary proceeding against both the Ottons and the Hills. Brady alleges that both Ottons are statutory "insiders" as defined by 11 U.S.C. § 101(31) because Nancy Otton was the Chief Financial Officer of HWC and Terry Otton was its Chief Operating Officer. Dkt. No. 9-22. The complaint asserts several causes of action against the Ottons, including (i) avoidance of fraudulent transfers, 11 U.S.C. §§ 544(b), 548; (ii) avoidance of preferential transfers, 11 U.S.C. §§ 547, 550, 551; (iii) usury; (iv) breach of fiduciary duty; and (v) equitable subordination, 11 U.S.C. § 510(c). *Id.* at ¶¶ 21-65.

On November 17, 2014, the Ottons counterclaimed against HWC, alleging (i) breach of contract in connection with the $1.75 million loan (i.e., the subject matter of Claim No. 59); and (ii) breach of contract and indemnity in connection with their guaranty of the Umpqua Bank advance (i.e. the subject matter of Claim No. 60). Dkt. No. 9-26 at ¶¶ 15-27. Brady moved to dismiss the counterclaim, arguing, among other things, that the exclusive means of recovering money damages from a Chapter 7 bankruptcy estate is through the filing of a proof of claim. Dkt. No. 9-31 at 5.

On January 29, 2015, the bankruptcy court issued a memorandum decision granting Brady's motion. Dkt. No. 1-3. The memorandum decision states in relevant part:

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, an action should be dismissed if it fails to state a claim upon which relief can be granted. The court cannot grant relief to the Ottons on their counterclaim because to do so would violate [11 U.S.C. §§ 502 and 726] as well as [Federal Rule of Bankruptcy Procedure 3002(a)]. There is no conceivable scenario whereby an unsecured creditor can obtain an enforceable money judgment against a Chapter 7 bankruptcy estate on account of a prepetition debt.

*Id.* The bankruptcy court further formalized the dismissal of the counterclaim in its "Order Granting Motion to Dismiss Counterclaim" on February 2, 2015 (the "dismissal order"). Dkt. No. 1-1. That order states in relevant part: "Brady's motion to dismiss the counterclaim is granted,

without leave to amend, but also without prejudice to the filing of a proof of claim and without prejudice to raising any of the matters asserted in the counterclaim as a defense or setoff, to the extent permitted by applicable law." *Id.*

The Ottons filed a timely notice of appeal on February 18, 2015. Dkt. No. 1. The appeal presents the question of whether the bankruptcy court's dismissal of the counterclaim, on the ground that granting relief on the counterclaim would violate 11 U.S.C. §§ 502 and 726 and Federal Rule of Bankruptcy Procedure 3002(a), was in error. Dkt. No. 13-1 at 4. The Ottons contend that the statutes and rule "do not preclude the court from granting relief on [the counterclaim], which instead is duly authorized by [Federal Rule of Civil Procedure 13] and [Federal Rule of Bankruptcy Procedure 7013] . . . and interpretive case law." *Id.*

Brady filed this motion to dismiss for lack of jurisdiction on March 11, 2015. Dkt. No. 3-4.[1] I heard argument from the parties on April 22, 2015. Dkt. No. 19.

## LEGAL STANDARD

28 U.S.C. § 158(a)(1) vests jurisdiction in district courts to hear appeals from the final judgments and orders of bankruptcy judges. Appeals from final orders under section 158(a)(1) are as of right. *See, e.g., In re Cameron*, No. 13-cv-02018-SI, 2014 WL 1028436, at *2 (N.D. Cal. Mar. 17, 2014). In contrast, with limited exceptions not relevant here, district courts lack jurisdiction over appeals from the interlocutory orders of bankruptcy judges except where the district court grants leave to appeal under 28 U.S.C §158(a)(3).

In considering whether to grant leave to appeal, courts generally "loo[k] to the standards set forth in 28 U.S.C. § 1292(b), which concerns the taking of interlocutory appeals from the district court to the court of appeals." *In re Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995); *see also In re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001) ("We look for guidance to the standards developed under 28 U.S.C. § 1292(b) to determine if leave to appeal should be granted [under section 158(a)(3)]."). The relevant question under 28 U.S.C § 1292(b) is "whether

---

[1] In conjunction with their opposition to the motion to dismiss, the Ottons submitted a request for judicial notice of two documents filed in the adversary proceeding. Dkt. No. 13. The request is GRANTED.

the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion and whether an immediate appeal may materially advance the ultimate termination of the litigation." *Roderick*, 185 B.R. at 604. Courts also consider whether denying leave to appeal from the interlocutory order would result in "wasted litigation and expense." *In re NSB Film Corp.*, 167 B.R. 176, 180 (B.A.P. 9th Cir. 1994); *see also Belli*, 268 B.R. at 858; *Roderick*, 185 B.R. at 604. "Interlocutory appeals are generally disfavored and should only be granted where extraordinary circumstances exist." *Cameron*, 2014 WL 1028436, at *4.

## DISCUSSION

Brady argues this Court lacks jurisdiction over the Ottons' appeal because the dismissal order was not a final order within the meaning of section 158(a)(1), and because the circumstances of this case do not justify discretionary review under section 158(a)(3). Mot. 4-7. For the following reasons, I agree.

### I.  THE DISMISSAL ORDER IS NOT A FINAL ORDER APPEALABLE AS OF RIGHT UNDER 28 U.S.C. § 158(a)(1)

The Ottons contend that the dismissal order is a final order under the flexible finality approach often applied by the Ninth Circuit to determine finality in the bankruptcy context. Opp. 5-6. A final order is ordinarily one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1139 (9th Cir. 2003) (internal quotation marks omitted); *see also Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773, 779 (2014) ("In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

Applying this traditional concept of finality to bankruptcy appeals "has bedeviled courts because the idiosyncrasies of bankruptcy sometimes make it difficult to discern whether orders entered in bankruptcy cases are final in the classic sense of ending litigation on the merits and leaving nothing for the court to do but execute the judgment." *Belli*, 268 B.R. at 854. The Ninth Circuit has accordingly developed a "pragmatic approach to finality in bankruptcy that emphasizes the need for immediate review rather than whether the order is technically interlocutory." *In re*

4

*Rosson*, 545 F.3d 764, 769 (9th Cir. 2008) (internal quotation marks and modifications omitted). Under this "flexible finality" approach, "a bankruptcy court order is considered to be final and thus appealable where it (1) resolves and seriously affects substantive rights and (2) finally determines the discrete issue to which it is addressed." *In re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000) (internal quotation marks omitted).[2]

While flexible finality is the general rule in the bankruptcy context, courts have recognized that it does not apply to the same extent to all bankruptcy decisions. In *In re Belli*, the Ninth Circuit Bankruptcy Appellate Panel observed that "the actual amount of flexibility applied depends on the circumstances," and that "[t]here is little flexibility when traditional finality rules are adequate." 268 B.R. at 854. Following these principles, the panel held that flexible finality does not apply to orders issued in adversary proceedings:

> Adversary proceedings are merely federal civil actions under another name, and do not ordinarily present the types of uncertainties that necessitate "flexible finality" analysis. Adversary

---

[2] Instead of this two-pronged analysis for determining flexible finality, the Ottons rely on the tests described in *In re Fowler*, 394 F.3d 1208 (9th Cir. 2005). *See* Opp. 5-6; Dkt. No. 13-1 at 5-6. *Fowler* states in relevant part:

> Two tests have developed in the Ninth Circuit to address the question of finality for bankruptcy proceedings . . . Under *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 895-96 (9th Cir.1992), we apply a four-pronged test that considers: "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." Under *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 904 (9th Cir.1993), we consider whether the central issue raised on appeal "is legal in nature and its resolution either (1) could dispose of the case or proceedings and obviate the need for factfinding; or (2) would materially aid the bankruptcy court in reaching its disposition on remand."

*Id.* at 1211. While some district courts have applied these tests to determine whether a bankruptcy court order is final for the purposes of 28 U.S.C. § 158(a)(1), *see, e.g., Oliner v. Kontrabecki*, 305 B.R. 510, 525 (N.D. Cal. 2004), the Ninth Circuit has applied them in a slightly different context – i.e., to determine whether a district court or bankruptcy appellate panel decision remanding a case to bankruptcy court is final for the purposes of review under 28 U.S.C. § 158(d), *see, e.g., Fowler*, 394 F.3d at 1211; *In re Saxman*, 325 F.3d 1168, 1171-72 (9th Cir. 2003); *In re Dyer*, 322 F.3d 1178, 1187 (9th Cir. 2003). Because the finality inquiry in this case is governed by 28 U.S.C. § 158(a)(1), not 28 U.S.C. § 158(d), the Ottons' reliance on the *Fowler* tests is misplaced (and would be even if flexible finality analysis were otherwise appropriate here).

> proceedings are a "single judicial unit." The parties are named in the pleadings; the claims are those presented in the respective counts of the complaint. The litigation is conducted under the Federal Rules of Civil Procedure . . . and follows the ordinary pattern of summons and complaint, answer, discovery, pretrial, trial, and judgment . . . What is significant about the applicability of the Federal Rules of Civil Procedure for our purposes is that they were constructed with ordinary principles of finality in mind . . . Thus, we hold that finality for purposes of jurisdiction over "as of right" appeals under 28 U.S.C. § 158(a)(1) in adversary proceedings does not differ from finality in ordinary federal civil actions under 28 U.S.C. § 1291.

*Id.* at 854-55. Under this analysis, the ordinary standards of 28 U.S.C. § 1291 and Federal Rule of Civil Procedure 54(b) control the determination of finality for the purposes of appeals from adversary proceedings, not flexible finality. *Id.* at 855-57; *see also Matter of King City Transit Mix, Inc.*, 738 F.2d 1065, 1066 (9th Cir. 1984) (declining to apply flexible finality to bankruptcy court's dismissal of one count of a multi-count counterclaim; stating, "in this case even the unique nature of a bankruptcy proceeding does not warrant a departure from final order jurisprudence developed in the context of 28 U.S.C. § 1291"); *Cameron* 2014 WL 1028436, at *3 ("[I]n the context of an adversary proceeding, an order is final if it would be considered an appealable final order in an ordinary federal civil action under 28 U.S.C. § 1291."); *Oliner*, 305 B.R. at 525-26 (declining to apply flexible finality to appeal of civil contempt order issued by bankruptcy court in adversary proceeding).

Flexible finality does not apply here. The dismissal order was issued in an adversary proceeding. The finality of the order should thus be determined by the ordinary standards of 28 U.S.C. § 1291, not by the pragmatic approach. *See, e.g., Belli*, 268 B.R. at 854-55. Moreover, even assuming that circumstances exist that would justify applying flexible finality to an order issued in an adversary proceeding, the Ottons have not provided any persuasive reason for applying it here. They do not cite a single case in which an appellate court has relied on flexible finality to determine jurisdiction over an appeal from an interlocutory order dismissing a counterclaim in an adversary proceeding.

Nor do the Ottons offer any persuasive explanation why "traditional finality rules are [in]adequate" for the purposes of this case. *See Belli*, 268 B.R. at 854. They assert that they will be irreparably harmed if their appeal is not heard now because they will be deprived of their setoff

rights under 11 U.S.C. § 553(a).[3] They further contend that hearing their appeal immediately "will avoid piecemeal litigation, as the issues in [their] counterclaim are intertwined with [Brady's] claims against [them]." Opp. 5. But these arguments ignore the fact that setoff rights under section 553(a) need not be asserted as a counterclaim – they may also be asserted as an affirmative defense. *See, e.g., Folger Adam Sec., Inc. v. DeMatteis / MacGregor JV*, 209 F.3d 252, 253-54 (3d Cir. 2000); *Durham v. SMI Indus. Corp.*, 882 F.2d 881, 883 (4th Cir. 1989); *In re M & L Bus. Mach. Co., Inc.*, 178 B.R. 270, 272 (Bankr. D. Colo. 1995) ("Setoff . . . can be raised as either an affirmative defense or a counterclaim.").

There is no reasonable basis for the Ottons' assertion that, by dismissing the counterclaim, the bankruptcy court deprived them of their section 553(a) setoff rights or precluded consideration of setoff issues as part of the adversary proceeding. Indeed, the bankruptcy court explicitly stated in the dismissal order that the dismissal was without prejudice to raising the issues underlying the counterclaim as a setoff. *See* Dkt. No. 1-1 ("Brady's motion to dismiss the counterclaim is granted, without leave to amend, but also without prejudice to . . . raising any of the matters asserted in the counterclaim as a . . . setoff, to the extent permitted by applicable law.").[4] The Ottons may also raise the subject matter of their counterclaim through the proof of claim process,

---

[3] 11 U.S.C. § 553(a) states in relevant part: "[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

[4] At oral argument, the Ottons asserted that the right to raise the subject matter of their counterclaim as an affirmative defense may be insufficient in either of two scenarios: (1) if Brady's claims against the Ottons fail; or (2) if Brady's claims against the Ottons succeed, but the bankruptcy court finds that the amount due the Ottons in setoff is greater than the amount owed by the Ottons in judgment on the claims. Neither scenario warrants characterizing the dismissal order as a final order. First, neither scenario changes the basic principle that finality in adversary proceedings is governed by the same standards as finality in federal civil actions. Second, in neither scenario would the Ottons be deprived of their section 553(a) setoff rights. If Brady's claims fail, then the Ottons' setoff rights would be moot. If Brady's claims succeed but the bankruptcy court finds that the amount due the Ottons in setoff is greater than the amount owed by the Ottons in judgment on the claims, then the Ottons' setoff rights would be protected to the extent they applied, and the remainder of the debt would likely be easily collectible through the preclusive effect of the bankruptcy court's finding. Third, even if raising the subject matter of the counterclaim as an affirmative defense proves inadequate, the proof of claim process offers an alternative route for pursuing the same issues. Finally, if all else fails, the Ottons will, of course, have an opportunity to appeal from the final judgment in the adversary proceeding, which is set for trial in December of this year.

1   a process they have already initiated by filing Claims Nos. 59 and 60.[5]  It is true that Brady or

2   another "party in interest" may object to those claims.  *See* 11 U.S.C. § 502(a) ("A claim or

3   interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in

4   interest . . . objects.").  But there is no indication that any party in interest has objected thus far,

5   and the Ottons have not identified any grounds for concluding that their claims are likely to be

6   disallowed if an objection is raised.

7          Applying the traditional concept of finality to this case, it is clear that the dismissal order is

8   not a final order.  The dismissal order did not "en[d] the litigation on the merits and leav[e]

9   nothing for the court to do but execute the judgment."  *Kirkland*, 343 F.3d at 1139.  The "judicial

10  unit" of which the Ottons' counterclaims were a part – i.e., the adversary proceeding – remains

11  pending, with Brady's claims against both the Ottons and the Hills still unresolved.  *Cf. In re Bank

12  of New England Corp.*, 218 B.R. 643, 647 (B.A.P. 1st Cir. 1998) ("An adversary proceeding is

13  perhaps the clearest example of a . . . 'judicial unit' within the bankruptcy case.").  Rule 54(b)

14  allows for entry of a final judgment as to a subset of the claims or parties involved in a case, but

15  "only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P.

16  54(b).  Absent this express determination, any order "that adjudicates fewer than all the claims or

17  the rights and liabilities of fewer than all the parties does not end the action as to any of the claims

18  or parties."  *Id.*  The dismissal order does not contain a Rule 54(b) certification.  *See* Dkt. No. 1-1.

19  Accordingly, under Rule 54(b), it is not a final order and is not appealable as of right under section

20  158(a)(1).  *See Belli*, 268 B.R. at 856 ("If there is no Rule 54(b) certification, then the order is

21  interlocutory, and appellate jurisdiction depends upon whether the appellate court grants leave to

22  appeal under [section] 158(a)(3).").[6]

---

[5] The Ottons do not dispute that the subject matter of Claim Nos. 59 and 60 is substantially identical to the subject matter of their counterclaim.

[6] The Ottons ask that Brady be estopped from relying on the dismissal order's lack of Rule 54(b) certification on account of Brady's alleged failure to comply with certain local bankruptcy rules governing the preparation and submission of proposed orders.  Opp. 6-7.  This request is DENIED.  A nonfinal order such as the dismissal order "may be revised at any time," Fed. R. Civ. P. 54(b), and a party may obtain a Rule 54(b) certification by motion following issuance of the underlying order, *see, e.g., Kersh v. Gen. Council of Assemblies of God*, 804 F.2d 546, 547 n.1 (9th Cir. 1986); *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1415-16 (9th Cir.

## II. INTERLOCUTORY REVIEW UNDER 28 U.S.C. § 158(a)(3) IS NOT WARRANTED

Because the dismissal order is not a final order, the Ottons' appeal is an interlocutory appeal. I find that interlocutory review is not warranted here for two principal reasons. First, interlocutory review is not likely to materially advance the ultimate termination of the litigation. As noted above, there are other methods by which the Ottons may raise the matters underlying their counterclaim – i.e., as an affirmative defense in the adversary proceeding, or through the proof of claim process in the liquidation proceeding. In light of these alternative methods of bringing to the bankruptcy court's attention the same issues involved in the Ottons' counterclaim, it is not clear how hearing their appeal now will materially advance the litigation. Even if the Ottons' appeal is successful, and on remand the bankruptcy court determines their counterclaim is viable, the Ottons will merely have gained an additional (and largely, if not completely, duplicative) means of raising the issues underlying their counterclaim.[7]

Second, I do not see how denying leave to appeal now will result in "wasted litigation and expense." *NSB Film*, 167 B.R. at 180. As stated above, the Ottons will likely be able to raise the subject matter of their counterclaim as an affirmative defense and/or through the proof claim process. Even if this were not the case, the Ottons fail to explain how adjudicating their counterclaim now is any more efficient than adjudicating it after the rest of the adversary proceeding has been resolved. In either scenario, Brady's claims against the Ottons and the Hills will proceed. Except for the section 553(a) setoff issue, the Ottons have not identified any way in which the resolution of their counterclaim will impact the adjudication of Brady's claims. In these circumstances, it is granting leave to appeal that would threaten to burden the parties with prolonged litigation and unnecessary expense. *See Cameron*, 2014 WL 1028436, at *5 (denying

---

1985); *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2014 WL 2586339, at *1-2 (N.D. Cal. June 9, 2014). If the Ottons wanted the dismissal order to be certified under Rule 54(b), they should have filed an appropriate motion with the bankruptcy court.

[7] If this case returns to me on appeal, the parties are advised to brief the relevance (if any) of *In re Adbox*, 488 F.3d 836 (9th Cir. 2007), where the Ninth Circuit held that a trustee is not an "opposing party" within the meaning of Federal Rule of Civil Procedure 13 when he brings a preference action that belongs to the bankruptcy estate, and the creditor brings a counterclaim alleging causes of action that could have been brought against the debtor before the bankruptcy filing. *Id.* at 840-41.

9

leave to appeal under section 158(a)(3) where "interlocutory appeal would delay the ultimate resolution of the adversary proceeding and potentially result in more expense to the parties").

For these reasons, I do not find that this case presents the sort of extraordinary circumstances that justify interlocutory review under section 158(a)(3).

## CONCLUSION

The dismissal order is not a final order, interlocutory review is not warranted, and neither party has identified any other basis for jurisdiction. I lack jurisdiction over the Ottons' appeal. Brady's motion to dismiss is GRANTED.

**IT IS SO ORDERED**.

Dated: April 27, 2015



WILLIAM H. ORRICK
United States District Judge